2008-NMCA-144

195 P.3d 353

**Suzanne GUEST and the Guest Law Firm, P.C., Plaintiffs–Appellants,**

v.

**David BERARDINELLI and Cheryl McLean, Defendants–Appellees.**

No. 26,813.

Court of Appeals of New Mexico.

Feb. 29, 2008.

Certiorari Denied, No. 31,089, Sept. 11, 2008.

See also, 142 N.M. 817, 171 P.3d 756.

Guest Law Firm, P.C., Suzanne Guest, Phoenix, AZ, for Appellants.

Butt Thornton & Baehr PC, Emily A. Franke, Alfred L. Green, Jr., Albuquerque, NM, for Appellee Berardinelli.

Bannerman & Williams PA, John A. Bannerman, Rikki L. Quintana, Albuquerque, NM, for Appellee McLean.

## OPINION

PICKARD, Judge.

{1} Plaintiffs, Suzanne Guest and the Guest Law Firm (Guest), appeal the district court's grant of summary judgment in favor of Defendants, David Berardinelli (Berardi-nelli) and Cheryl McLean (McLean) (collectively referred to as Defendants), on three claims: (1) malicious abuse of process, (2) interference with existing and prospective contractual relations, and (3) prima facie tort. Guest argues that genuine issues of material fact preclude summary judgment on all claims. We disagree and therefore affirm.

## BACKGROUND

{2} On March 11, 1997, Jamie Deveney and Travis Durham (the Durhams) were involved in an automobile accident with an uninsured drunk driver and made uninsured motorist (UM) claims against Allstate Insurance Company (Allstate) under Deveney's automobile insurance policy. Guest represented Allstate as defense counsel in the arbitration of the Durhams' UM claims. The Durhams were represented by McLean. The Durhams were so upset by Allstate and Guest's behavior in settlement discussions, discovery, and the arbitration hearing that they asked McLean to explore the possibility of suing Guest and Allstate.

{3} On January 30, 2002, the Durhams sued Guest, Allstate, and an Allstate adjuster over the handling of their UM claims. The Durhams were represented by McLean, as well as Berardinelli, an attorney known to specialize in bad faith actions against Allstate. The Durhams asserted claims against Guest in her role as arbitration counsel for Allstate for violations of the New Mexico insurance code, aiding and abetting a violation of fiduciary duty, unjust enrichment, malicious abuse of process (MAP), malicious defense, and prima facie tort. The complaint accused Guest of malicious character assassination of the Durhams and of maliciously abusing process to obtain their employment and medical records outside the scope of discovery or in violation of protective orders with the intent to humiliate the Durhams, to cause or threaten them to lose their employment, to extort and intimidate them to give up their rights, and to retaliate against them for not accepting Allstate's settlement offer.

{4} These claims were based on the underlying premise that these allegedly unfair or deceptive claims handling practices were conducted pursuant to Allstate's aggressive national CCPR (claims core process redesign),

DOLF (defense of litigated files) and SFXOL (settle for X or less) policies and procedures, which Berardinelli and McLean believe to be fraudulent. All claims against Guest, with the exception of the MAP claim, were dismissed by the district court with prejudice in December 2002. The remaining MAP claim was dismissed with prejudice in an order entered on September 12, 2005, and this Court recently affirmed the dismissal of all claims in *Durham v. Guest*, 2007–NMCA–144, 142 N.M. 817, 171 P.3d 756, *cert. granted*, 2007–NMCERT–010, 143 N.M. 74, 172 P.3d 1286.

{5} The instant dispute arose while *Durham* was still pending in New Mexico district court. On June 24, 2005, Guest filed an amended complaint against McLean, Berardinelli, and Allstate. Guest's claims against Allstate are not the subject of this appeal. The complaint alleged that McLean and Berardinelli had purposely filed the *Durham* suit against Guest to discourage and intimidate Guest and other attorneys from defending Allstate in current or future UM litigation; to improperly hold Guest responsible in her individual capacity as defense counsel for Allstate's actions, policies, and procedures; and to punish Guest for her defense of Allstate. Guest sought damages from McLean and Berardinelli for MAP, tortious interference with Guest's existing and prospective contractual relations with Allstate, and prima facie tort. McLean and Berardinelli moved for summary judgment on all three claims, and the district court granted the motions in an oral ruling that was transcribed and made part of the record in this appeal at the district court's request.

## DISCUSSION

### I. Standard of Review

{6} A district court's grant of summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 1–056(C) NMRA. Once the movant meets the initial burden of negating at least one of the essential elements upon which the opponent's claims are grounded, the burden shifts to the non-moving party to come forward with admissible evidence to establish each element of the claim that has been so negated. *Blauwkamp v. Univ. of N.M. Hosp.*, 114 N.M. 228, 231–32, 836 P.2d 1249, 1252–53 (Ct.App.1992).

{7} The non-moving party must show "at least a reasonable doubt, rather than a slight doubt, as to the existence of a genuine issue of fact." *Ciup v. Chevron U.S.A., Inc.*, 1996–NMSC–062, ¶ 7, 122 N.M. 537, 928 P.2d 263. In this connection, we note that recent cases employing the "slight doubt" or "slightest doubt" standard have relied on cases predating the seminal case of *Goodman v. Brock*, 83 N.M. 789, 792, 498 P.2d 676, 679 (1972), in which the Supreme Court unequivocally rejected the "slightest doubt" standard in favor of one of reasonable doubt. *See, e.g., Ocana v. Am. Furniture Co.*, 2004–NMSC–018, ¶ 22, 135 N.M. 539, 91 P.3d 58 (relying on the pre-*Goodman* case of *Las Cruces Country Club, Inc. v. City of Las Cruces*, 81 N.M. 387, 467 P.2d 403 (1970)).

{8} Our review is de novo, meaning that we will "apply our own judgment in gleaning the facts from the record, assimilating them into a coherent story, weighing their relevance, and evaluating their legal significance." *Reed v. State ex rel. Ortiz*, 1997–NMSC–055, ¶ 47, 124 N.M. 129, 947 P.2d 86, *rev'd on other grounds*, 524 U.S. 151, 118 S.Ct. 1860, 141 L.Ed.2d 131 (1998). We analyze the legal issues without any presumption in favor of the judgment of the court below. *Id.* We make all reasonable inferences in favor of the non-moving party. *Celaya v. Hall*, 2004–NMSC–005, ¶ 7, 135 N.M. 115, 85 P.3d 239.

### II. Malicious Abuse of Process

{9} In New Mexico, the tort of MAP is generally disfavored as a cause of action. *Dawley v. La Puerta Architectural Antiques, Inc.*, 2003–NMCA–029, ¶ 23, 133 N.M. 389, 62 P.3d 1271. MAP claims involve balancing "the interest in protecting litigants' right of access to the courts and the interest in protecting citizens from unfounded or illegitimate applications of the power of the state through the misuse of the courts." *DeVaney v. Thriftway Mktg. Corp.*, 1998–

NMSC–001, ¶ 14, 124 N.M. 512, 953 P.2d 277, *abrogated on other grounds by Fleetwood Retail Corp. of N.M. v. LeDoux,* 2007–NMSC–047, 142 N.M. 150, 164 P.3d 31. Because meaningful access to the courts is a right of fundamental importance in our system of justice, our courts construe MAP narrowly to protect this right. *Weststar Mortgage Corp. v. Jackson,* 2003–NMSC–002, ¶ 6, 133 N.M. 114, 61 P.3d 823. The "filing of a proper complaint with probable cause, and without any overt misuse of process, will not subject a litigant to liability for [MAP], even if it is the result of a malicious motive." *DeVaney,* 1998–NMSC–001, ¶ 20, 124 N.M. 512, 953 P.2d 277.

{10} With this in mind, the elements of MAP are:

(1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages.

*Id.* ¶ 17. The parties' arguments in this case focus principally on the second element, which may be satisfied by Guest in one of two ways: (1) with proof that Defendants filed the *Durham* complaint without probable cause or (2) by demonstrating that Defendants engaged in some other procedural impropriety "suggesting extortion, delay, or harassment." *See DeVaney,* 1998–NMSC–001, ¶¶ 22, 28, 124 N.M. 512, 953 P.2d 277. We first address the question of probable cause, and then we discuss Guest's allegations of procedural impropriety.

## A. Probable Cause

{11} In granting summary judgment on Guest's MAP claim, the district court ruled that Defendants had probable cause to name Guest as a party in the *Durham* suits. The district court applied the proper standard: whether Defendants had a reasonable belief, founded on known facts established after a reasonable pre-filing investigation, that a claim could be established to the satisfaction of a court or a jury. *DeVaney,* 1998–NMSC–001, ¶ 22, 124 N.M. 512, 953 P.2d 277. Guest

argues on appeal that Defendants overtly misused process by filing the *Durham* complaint without meeting this standard. As discussed below, we agree with the district court's analysis of the facts bearing on the question of probable cause, and we affirm its ruling.

{12} We first inquire whether Defendants have made a prima facie showing that they performed a reasonable pre-filing inquiry. *See DeVaney,* 1998–NMSC–001, ¶ 22, 124 N.M. 512, 953 P.2d 277. A prima facie showing encompasses "such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Goodman,* 83 N.M. at 792–93, 498 P.2d at 679–80. Prior to filing suit, McLean and the Durhams provided Berardinelli with the factual background of the arbitration, based on their own experience and perceptions. Berardinelli reviewed McLean's entire file on the matter, including all correspondence, arbitration pleadings, arbitration discovery, medical records, and depositions. Deveney provided an April 19, 2000, written statement concerning Allstate's handling of her claims. Additionally, Berardinelli reviewed materials and information about Allstate's claims processing procedures that he had previously compiled over the course of his study of Allstate's claim handling since approximately 1998. He asserted that he analyzed the potential causes of action against Guest and that he filed the *Durham* lawsuits based on this analysis. We hold that these actions meet the *DeVaney* standard for a reasonable pre-filing investigation. *See DeVaney,* 1998–NMSC–001, ¶ 22, 124 N.M. 512, 953 P.2d 277.

{13} Next, we inquire into whether Defendants have made a prima facie showing that the knowledge arising from their pre-filing inquiry supported a reasonable belief that they had grounds to bring their claims against Guest. *See id.* In doing so, we must recognize that "[p]robable cause does not require certainty," a standard which we understand to grant attorneys reasonable latitude in asserting novel claims under New Mexico law. *See S. Farm Bureau Cas. Co. v. Hiner,* 2005–NMCA–104, ¶ 19, 138 N.M. 154, 117 P.3d 960. The district court found that

Defendants had a reasonable belief that their claims, some of them novel, could be established to the satisfaction of a judge or jury. We agree, for the following reasons.

{14} Defendants had evidence that Guest's pre-arbitration discovery inquired into whether Deveney had ever been the victim of, reported, or received counseling for domestic abuse, a potential violation of the Domestic Abuse Insurance Protection Act, NMSA 1978, § 59A–16B–6 (1997), and the insurance Trade Practices and Frauds Act, NMSA 1978, § 59A–16–20(O) (1997). Defendants knew that Guest served an employment records subpoena upon Rocky Mountain Awning, Deveney's past employer, under the judicial authority and command of the Second Judicial District Court and with a cover letter stating that the subpoena was "the equivalent of a Court Order," despite the fact that no case was pending in any court. They also knew that Guest served this subpoena on September 25, 1998, despite what the arbitrator believed to be her oral ruling on September 22, 1998, that Guest withdraw her request for employment information and records from Deveney's previous employers, including Rocky Mountain Awning, which was confirmed by the arbitrator in writing on September 28, 1998. Moreover, they knew that after learning that Deveney's supervisor at her current employer, the retail establishment Laura Ashley, had threatened Deveney with the loss of her job unless the records subpoena Guest served on the store was withdrawn, Guest telephoned Deveney directly and told her to make sure Laura Ashley complied with the subpoena. These facts reasonably support a potentially viable claim for MAP.

{15} Even if Guest is correct that the arbitrator's oral ruling of September 22, 1998, was unclear as to whether it applied only to the current employer, and not past employers, there is nothing in the record showing that Berardinelli had personal knowledge of such lack of clarity since he got his information from McLean and Deveney, and the arbitrator specifically confirmed the nature of her oral ruling in writing on the later date. Thus, Berardinelli made a stronger case for summary judgment than McLean. But even McLean's case was a prima facie one because of the other undisputed facts concerning the Rocky Mountain Awning subpoena and the belief that Guest's actions were part of Allstate's aggressive protocols to which we now turn.

{16} Next, the district court found that there was a reasonable basis for Defendants' belief that the *Durham* arbitration was addressed under Allstate's aggressive CCPR and DOLF claims handling procedures, which Defendants believed constituted a violation of Allstate's common law fiduciary duty to the Durhams as insured parties, and that Guest was acting pursuant to those policies. We hold that the facts known by Defendants prior to filing support such a belief. As a result of their inquiry, Defendants knew that six days before arbitration, Allstate made a settlement offer of $5,800 to Deveney and $7,500 to Durham and that both offers were significantly lower than the Durhams' policy limits of $25,000 per individual, not to mention the final total arbitration award of $45,000. Defendants also knew, because McLean was present at the arbitration hearing, that Guest offered evidence and arguments that implicated sensitive aspects of the Durhams' personal lives, including Deveney's pediatric medical records, Deveney's gynecological and pregnancy records, evidence that Durham had been abused as a child, and evidence that Deveney was a life-long drug addict based on his prescribed use of Ritalin to treat Adolescent Attention Deficit/Hyperactivity Disorder.

{17} The district court found, and we agree, that a reasonable attorney could have determined based upon Allstate's settlement offers and Guest's conduct in discovery and at the arbitration hearing that Guest and Allstate were acting pursuant to the aggressive Allstate UM claims handling policies with which Berardinelli had become familiar through his previous suits for bad faith against the company, thus supporting a novel claim for holding Guest individually liable for statutory violations of the Insurance Code, including the insurance Trade Practices and Frauds Act. *See* NMSA 1978, § 59A–16–3 (1984); § 59A–16–20(G), (O). In granting summary judgment, the district court cor-

rectly noted that it was irrelevant at the time of filing whether or not Allstate's CCPR and DOLF protocols were actually implemented in this case. Probable cause is to be determined by facts as they appeared to Defendants at the time of filing, not by later-discovered facts. *See Weststar Mortgage Corp.*, 2003–NMSC–002, ¶ 16, 133 N.M. 114, 61 P.3d 823.

{18} Accordingly, we hold that the facts Defendants ascertained from their pre-filing inquiry give rise to a prima facie showing that Defendants had probable cause to name Guest as a party in her individual capacity in the *Durham* suits. In so holding, we note that the fact that Defendants' claims were ultimately dismissed by the district court has no bearing on the question of whether Defendants had probable cause to file suit. *DeVaney*, 1998–NMSC–001, ¶ 23, 124 N.M. 512, 953 P.2d 277 (holding that "favorable termination is not an element of an action for malicious abuse of process").

{19} This is particularly true when evaluating probable cause in the context of MAP suits against attorneys. In *Durham*, we relied on the notions that attorneys have some measure of freedom in representing their clients, and we did not want to chill an attorney's vigorous representation of the client; accordingly, except in unusual circumstances, an attorney should not have to worry about asserted duties to non-clients. *Durham*, 2007–NMCA–144, ¶¶ 20–22, 142 N.M. 817, 171 P.3d 756. Out-of-state authority supports application of this principle to the issue of probable cause in MAP cases against attorneys. The California Supreme Court recently stated, "Only those actions that any reasonable attorney would agree are totally and completely without merit may form the basis for a malicious prosecution suit." *Zamos v. Stroud*, 32 Cal.4th 958, 12 Cal.Rptr.3d 54, 87 P.3d 802, 810 (2004).

{20} Similarly, the Connecticut Supreme Court said, " 'The vitality of our common law system is dependent upon the freedom of attorneys to pursue novel, although potentially unsuccessful, legal theories.' " *Falls Church Group, Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 912 A.2d 1019, 1032 (2007) (quoting *Wong v. Tabor*, 422 N.E.2d 1279, 1288 (Ind.Ct.App.1981)). These pronouncements are consistent with our own Rules of Professional Conduct and the ABA Comment printed immediately following in our annotated rules volumes. *See* Rule 16–301 NMRA ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."); *see also* Rule 16–301 ABA cmt. ("The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail.").

{21} It would be inconsistent with these authorities to require plaintiffs' attorneys, such as Berardinelli or McLean, to interview and investigate the defendant, Guest, and her witnesses and then disregard what their own client told them. It would be inconsistent with the attorneys' professional duty to zealously advocate for their clients were we to hold Berardinelli and McLean to the standard Guest proposes.

{22} We now turn to Guest's burden under our summary judgment standard. In opposing summary judgment, Guest's burden is to show specific evidentiary facts in the form of admissible evidence that require a trial on the merits. *See Ciup*, 1996–NMSC–062, ¶ 7, 122 N.M. 537, 928 P.2d 263. In support of her argument, Guest attached her own affidavit and that of Isabel Barela, Deveney's supervisor at Laura Ashley, to her summary judgment filings. Upon our review of the record, we hold that summary judgment was properly granted even though some disputed issues remain, because there are sufficient undisputed facts to support a judgment and many of the disputed facts relate to immaterial issues. *See Oschwald v. Christie*, 95 N.M. 251, 253, 620 P.2d 1276, 1278 (1980).

{23} Our decision to affirm the district court rests on the distinction between a disputed fact and a genuine issue of material

fact sufficient to defeat summary judgment. The former may be any fact upon which the parties disagree, while the latter is defined as "a triable, substantial, or real question of fact supported by substantial evidence." *Black's Law Dictionary* 708 (8th ed.2004). Although Guest's arguments, affidavits, and attachments demonstrate the existence of a number of disputed facts, we are unpersuaded that any of these disputes gives rise to a genuine issue that is material to the question of whether Defendants had probable cause to file suit. The facts that Guest contends are in dispute include (1) whether it was Guest or her former law partner who issued the Laura Ashley subpoena, (2) whether McLean provided Berardinelli with an accurate copy of a letter she sent to Guest and the arbitrator on September 17, 1998, (3) whether Guest was ever in possession of Deveney's Laura Ashley employment file, (4) whether McLean had ever seen a copy of the Laura Ashley subpoena, (5) whether Guest argued at the arbitration hearing that Deveney was promiscuous or that Durham was a drug abuser, and (6) whether Guest was "rude and condescending" to the Durhams at the arbitration hearing. Guest swears in her affidavit that the erroneous and misleading caption on the Rocky Mountain Awning subpoena was the product of clerical error. She swears that she never directly contacted Deveney. She attests that she did not know what Allstate's CCPR and DOLF protocols were until after the *Durham* suits were filed. The Barela affidavit raises a factual dispute regarding whether McLean ever spoke with Barela to confirm Deveney's statement that Barela told Deveney she would lose her job due to the Laura Ashley subpoena, controverting McLean's sworn statement to the contrary. It also provides evidence that Barela never told Deveney that her job could be jeopardized based on a request for employment records or information.

{24} We hold that the determination by a jury of any of the above facts would not negate Defendants' probable cause to file suit based upon the remaining undisputed facts before them at the time of filing. *See Oschwald*, 95 N.M. at 253, 620 P.2d at 1278. In the MAP context, probable cause is a matter of timing. *Weststar Mortgage Corp.*, 2003–NMSC–002, ¶ 16, 133 N.M. 114, 61 P.3d 823 (explaining that probable cause is to be determined "by facts as they appeared at the time, not by later-discovered facts" (internal quotation marks and citation omitted)). Sufficient undisputed facts as they appeared to Defendants at the time of filing support the district court's ruling, including (1) the fact that Guest attempted to discover the Durhams' confidential domestic abuse information by interrogatory, (2) the fact that the Rocky Mountain Awning subpoena was issued with a misleading caption and cover letter, and (3) the fact that Guest's discovery tactics comported with Defendants' understanding of Allstate's claims handling protocols. *See id.* Moreover, the lack of probable cause in MAP cases must be manifest. *DeVaney*, 1998–NMSC–001, ¶ 22, 124 N.M. 512, 953 P.2d 277 (defining "manifest" as "very clearly proven" or "very palpable" (internal quotation marks and citation omitted)). Finally, by analogy to the *Fleetwood* doctrine that probable cause is not determined on a claim-by-claim basis, 2007–NMSC–047, ¶ 20, 142 N.M. 150, 164 P.3d 31, we hold that Guest's disputed facts, even if they were determined by a jury in her favor, could not support such a showing in light of the undisputed facts.

{25} Guest further alleges that the exhibits attached to Defendants' motions for summary judgment show that "it was likely if not probable" that false or manufactured evidence was created and relied upon by Defendants. Guest contends that she has been damaged by Defendants' "false pleadings, false accusations and false facts" and cites to *In re Gabell*, 115 N.M. 737, 858 P.2d 404 (1993), presumably to suggest that Defendants should be disbarred for such behavior. She claims that the affidavits of both Deveney and McLean are perjured and that other "clear evidence of fraud" appears in the record. However, Guest does not direct us to the evidence supporting these serious accusations. Guest directs us to only one example of allegedly fraudulent activity that finds any support in the record: an unsigned letter that McLean provided to Berardinelli prior to filing suit contains a paragraph that does not appear in the signed version, which Mc-

Lean mailed to Guest and the arbitrator in the underlying proceeding. Although it cannot reasonably be disputed that two versions of this letter were drafted by McLean and that the shorter, signed version was mailed to Guest and the arbitrator while the longer, unsigned version was provided to Berardinelli for purposes of Defendants' pre-filing inquiry, it is unclear to us how the unsigned version constituted false or manufactured evidence so as to make the holding of *Gabell* applicable to this case. Moreover, we hold that a jury's consideration of the effect the unsigned version of the McLean letter might have had upon the reasonableness of Defendants' pre-filing inquiry could not defeat summary judgment in light of the undisputed facts detailed above that support the district court's ruling that Defendants conducted a reasonable pre-filing inquiry as required by *DeVaney. See DeVaney,* 1998–NMSC–001, ¶ 22, 124 N.M. 512, 953 P.2d 277. We decline to address Guest's remaining contentions regarding false and manufactured evidence for lack of citation to the record. Rule 12–213(A)(4) NMRA 2007.

## B. Procedural Impropriety

{26} Under *DeVaney,* lack of probable cause is not the only way to establish misuse of process, the second element of an MAP claim. 1998–NMSC–001, ¶ 28, 124 N.M. 512, 953 P.2d 277. This element may also be shown by "some irregularity or impropriety suggesting extortion, delay, or harassment." *Id.* A procedural impropriety may be demonstrated by (1) a "procedural irregularity" involving misuse of procedural devices such as discovery or (2) "an act that otherwise indicates the wrongful use of proceedings." *Id.* While noting that "[t]he usual case of abuse of process is one of some form of extortion, [i.e.,] using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it," *id.* (internal quotation marks and citation omitted), *DeVaney* offers the following other examples of wrongful use of proceedings:

> excessive execution on a judgment; attachment on property other than that involved in the litigation or in an excessive amount; oppressive conduct in connection with the arrest of a person or the seizure of property, such as illegal detention and conversion of personal property pending suit; extortion of excessive sums of money.

*Id.* (internal quotation marks and citation omitted).

{27} We understand Guest to be contending on appeal that Defendants wrongfully named her as a defendant in the *Durham* suit to punish her for her representation of Allstate, to force her to defend herself, and to extort a money settlement from her. Her argument seems to focus on facts that she believes call into question Defendants' stated motives in filing the *Durham* lawsuit—namely, to further the Durhams' rights and interests and to expand the law in New Mexico by pursuing a novel theory of liability against insurance defense attorneys. Guest states that she insisted that Defendants dismiss her from the *Durham* suit with prejudice pursuant to Rule 1–041 NMRA and that in a letter dated June 5, 2002, Berardinelli offered to move for such a dismissal without payment as part of a global settlement of all claims against Guest, Allstate, and Allstate's adjuster. After Allstate refused to participate in this global settlement, Berardinelli then insisted that Guest settle individually. Guest refused Berardinelli's settlement offer and informed him she would defend. Guest contends that Defendants then demanded payment of $35,000 from her and "refused any resolution with Guest for years" unless Guest agreed to release Defendants personally from any liability for suing her. Guest also describes a statement by Berardinelli before the *Durham* court in which he acknowledged that the Durhams did not want any money from Guest, they did not want to pursue any causes of action against her, they were satisfied with the $35,000 they had agreed to accept from Allstate in settlement of all claims, and they "just wanted to dismiss the lawsuit." In the same exchange, Guest's counsel responded that "Guest does not want to be a party to a settlement, period." A settlement was never reached, and Defendants never agreed to dismiss Guest. Guest characterizes Defendants' settlement offers as "outrageous, an abuse of process, extortionate, fraudulent, harassing, offensive,

threatening, meant to intimidate, improper and unethical."

{28} We disagree with Guest's contention that Defendants' refusal to dismiss her from the underlying case without a settlement agreement rises to the level of behavior satisfying the "procedural impropriety" prong of the second element of her MAP claim. Public policy favors settlement of cases. *Hovet v. Lujan,* 2003–NMCA–061, ¶ 12, 133 N.M. 611, 66 P.3d 980, *aff'd, Hovet v. Allstate Ins. Co.,* 2004–NMSC–010, 135 N.M. 397, 89 P.3d 69. However, as this Court has noted, "neither side has a duty to look out for the interests of the other." *King v. Allstate Ins. Co.,* 2007–NMCA–044, ¶ 17, 141 N.M. 612, 159 P.3d 261. It is clear from the record before us that the parties in this case were simply unable to negotiate a satisfactory agreement that would result in Guest's dismissal from the *Durham* suit. We hold that settlement negotiations, without evidence of extortion or other fraudulent behavior, cannot give rise to a procedural impropriety sufficient to meet the second element of a MAP claim.

## C. Preclusion Doctrines

{29} Guest argues further that the allegations brought against her are barred by res judicata, collateral estoppel, waiver, laches, or abandonment because they were or could have been raised at the arbitration hearing. She argues that the factual discovery allegations raised in the *Durham* lawsuits were either unsuccessful when raised during the 1998 arbitration proceedings or were thereafter abandoned, waived, or never raised despite adequate opportunity to do so. Guest cites *Bank of Santa Fe v. Marcy Plaza Associates,* 2002–NMCA–014, ¶¶ 13–14, 131 N.M. 537, 40 P.3d 442, seemingly in support of this proposition. Although the cited paragraphs in *Bank of Santa Fe* provide a concise summary of the claim preclusion doctrine, the case as a whole does not support Guest's argument. The court in *Bank of Santa Fe* assumed without deciding that res judicata applies to arbitration hearings and then held that the requisites necessary to prove res judicata were not present in that case. *Id.* ¶ 15. Our courts have never held that res judicata applies to an arbitration proceeding, and Guest cites no other authority in support of her remaining preclusion theories. Where a party does not cite to authority in support of a proposition of law, we decline to do the research on the party's behalf. *In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) ("We have long held that to present an issue on appeal for review, an appellant must submit argument *and authority* as required by rule.").

## D. *Hovet v. Allstate Insurance Company*

{30} Guest also argues on appeal that the *Durham* suits were barred as a matter of law under *Hovet,* 2004–NMSC–010, ¶ 27, 135 N.M. 397, 89 P.3d 69, which held that defense attorneys may not be named as party-defendants in claims brought under the unfair claims practices section of the Insurance Code. However, *Hovet* was decided three years after the *Durham* complaints were filed. Thus, *Hovet* has no practical effect on the question of whether Defendants filed the *Durham* suit in 2001 with probable cause. *See DeVaney,* 1998–NMSC–001, ¶ 22, 124 N.M. 512, 953 P.2d 277 (explaining that the inquiry as to whether adequate probable cause existed to support the filing of a lawsuit necessarily focuses on the period of time immediately preceding the filing of the complaint). As for Guest's contention that Defendants engaged in a procedural impropriety sufficient to give rise to a viable claim for MAP by continuing to refuse to dismiss her from the *Durham* suit despite an obligation to dismiss her once *Hovet* was decided, we note that the holding of *Hovet* could not reasonably be read to bar all of Defendants' claims against Guest. For example, their claim for MAP would have been unaffected by the *Hovet* decision. Accordingly, Defendants were under no obligation to dismiss Guest from the *Durham* suit once the *Hovet* decision was filed. We hold that *Hovet* neither negated Defendants' probable cause to file in 2001 nor imposed any obligation on Defendants to dismiss Guest from the *Durham* suit.

{31} We affirm the dismissal of Guest's MAP claim.

## III. Tortious Interference with Contract

{32} Guest alleges that Defendants interfered with both her existing contractual relationship and her prospective contractual relationship with Allstate. Under New Mexico law, these are separate claims, although there is considerable evidentiary overlap between the two causes of action. To prove intentional interference with an existing contract, Guest must demonstrate that (1) Defendants had knowledge of a contract between Guest and Allstate, (2) performance of the contract was refused, (3) Defendants played an active and substantial part in causing Guest to lose the benefits of the contract, (4) damages flowed from the breached contract, and (5) Defendants induced the breach without justification or privilege. *See Ettenson v. Burke*, 2001–NMCA–003, ¶ 14, 130 N.M. 67, 17 P.3d 440. "Establishing tortious interference with contract is not easy." *Id.* Tort liability attaches "only where the interference is without justification or privilege." *Williams v. Ashcraft*, 72 N.M. 120, 121, 381 P.2d 55, 56 (1963). In causing one to lose the benefits of the contract, the tortfeasor must act either with an improper motive or by use of improper means. *See Diversey Corp. v. Chem–Source Corp.*, 1998–NMCA–112, ¶ 20, 125 N.M. 748, 965 P.2d 332. To prove intentional interference with prospective contractual relations, Guest must show that Defendants damaged her by either (1) inducing or otherwise causing Allstate not to enter into or continue a prospective relation with Guest or (2) preventing Guest from acquiring or continuing a prospective relation with Allstate. *See M & M Rental Tools, Inc. v. Milchem, Inc.*, 94 N.M. 449, 453, 612 P.2d 241, 245 (Ct.App.1980). To prove either cause of action, Guest must demonstrate that Defendants interfered "either through improper means or improper motive." *Diversey Corp.*, 1998–NMCA–112, ¶ 20, 125 N.M. 748, 965 P.2d 332.

{33} Guest contends that Allstate refused to defend her against the Durhams and terminated its working relationship with her as a direct result of Defendants' filing of the *Durham* suit. The district court granted summary judgment on this issue because it believed that the undisputed facts failed to establish a connection between the filing of the *Durham* suit and any actions that Allstate may have taken in its contractual relations with Guest. The court ruled that the undisputed evidence showed that Allstate took its actions related to the representation of Guest based upon its own evaluation and determination of what its obligations were under law and under contract, not based on the actions of Defendants, and that any other action Defendants may have taken could not provide a basis for tortious interference with the contract between Guest and Allstate. We agree with the district court and affirm the summary judgment on this issue.

{34} We begin by holding that Defendants have made a prima facie showing negating an essential element of both causes of action. *See Blauwkamp*, 114 N.M. at 231–32, 836 P.2d at 1252–53. Undisputed evidence shows that Guest's relationship with Allstate did not end as the result of an improper action by Defendants, thereby negating the third element of her intentional interference with existing contract claim and both prongs of her intentional interference with prospective contractual relations claim. In her complaint, Guest admitted that Allstate refused to defend and indemnify her in the *Durham* suit not as a result of any action taken by Defendants, but rather because "Allstate's bylaws did not require it to defend its outside defense attorneys who were sued along with Allstate in an Allstate bad faith action." Of her own volition, she returned most of her pending cases to Allstate upon learning that they would not defend her in the *Durham* suit. She admits that she stopped taking Allstate cases because to continue to defend Allstate would present "an unreasonable and unacceptable risk to Guest ... and her law firm." Furthermore, as discussed above, Defendants demonstrated that the *Durham* suit was filed with probable cause and without any other overt misuse of process. Even if we assume that the *Durham* suit was the impetus for Allstate's actions, as we have discussed above, Defendants made a prima facie showing that the *Durham* complaint was not filed with the intent to interfere with Guest's contractual relations with Allstate "either through improper means or improper motive," thereby negating essential elements

of both interference claims. *See Diversey Corp.*, 1998–NMCA–112, ¶ 20, 125 N.M. 748, 965 P.2d 332.

■ {35} We next inquire whether Guest raised a genuine issue of material fact sufficient to defeat summary judgment. However, Guest's brief in chief fails to cite to any specific disputed fact that is material to this particular claim. Instead, she states in her brief that all of the underlying facts were disputed, and then she provides her version of the facts of this entire case without explaining why summary judgment was improperly granted on her interference with contract claim. General assertions of the existence of a triable issue are insufficient to overcome summary judgment on appeal. *See Clough v. Adventist Health Sys., Inc.*, 108 N.M. 801, 803, 780 P.2d 627, 629 (1989) ("[M]ere argument or bare contentions of the existence of a material issue of fact is insufficient."); *Spears v. Canon de Carnue Land Grant*, 80 N.M. 766, 769, 461 P.2d 415, 418 (1969) ("Mere argument or contention of existence of material issue of fact ... does not make it so. The party opposing a motion for summary judgment cannot defeat the motion ... by the bare contention that an issue of fact exists, but must show that evidence is available." (citation omitted)); *Schmidt v. St. Joseph's Hosp.*, 105 N.M. 681, 683, 736 P.2d 135, 137 (Ct.App.1987) (stating that "a general allegation without an attempt to show the existence of those factual elements comprising the claim or defense" is insufficient to overcome a motion for summary judgment (internal quotation marks and citation omitted)). Guest seems to have effectively abandoned her interference claims on appeal, since she proffered no argument in her brief in chief on these claims and failed to cite any pertinent authority. Our rules of appellate briefing are clear: "an argument which, with respect to each issue presented, shall contain ... the contentions of the appellant ... with citations to authorities and parts of the record proper, transcript of proceedings or exhibits relied on." Rule 12–213(A)(4); *Truong v. Allstate Ins. Co.*, 2008–NMCA–051, ¶ 7, 143 N.M. 831, 182 P.3d 814.

■ {36} Similar deficiencies plague Guest's reply briefs. In her reply to Berar-dinelli's answer brief, Guest states that "Berardinelli spent most of *Durham* interfering with Guest's defense and her ability to represent Allstate and its insureds." Guest alludes to "a very odd collusion" between Allstate and Defendants and suggests that further discovery is necessary in order to establish this theory. Guest asserts that Berardinelli put a provision in a proposed settlement agreement with Allstate that Berardinelli would sue Guest's defense attorney if Guest ever made a claim against him for suing her and that doing so had "no other effect than interfering with Guest's defense, which in fact it did." We need not guess at the meaning or intention of these allegations; we do not consider arguments raised in a reply brief for the first time. Rule 12–213(C) ("The appellant may file a brief in reply to the answer brief. Such brief ... shall be directed only to new arguments or authorities presented in the answer brief."); *see Brashear v. Baker Packers*, 118 N.M. 581, 583, 883 P.2d 1278, 1280 (1994). In the absence of a genuine issue of material fact, we affirm the district court's grant of summary judgment on this claim.

**IV. Prima Facie Tort**

■ {37} Finally, Guest argues that genuine issues of material fact preclude summary judgment on her prima facie tort claim. In its oral ruling, the district court stated that it found a "mirror image" between the facts necessary to establish Guest's prima facie tort claim and those necessary to establish her MAP claim. Having found no genuine issue of material fact sufficient to defeat summary judgment on Guest's MAP claim, the district court granted summary judgment on her prima facie tort claim as well. Prima facie tort is not intended to be a "catch-all" alternative for every action that cannot stand on its own legs. *Beavers v. Johnson Controls World Servs. Inc.*, 120 N.M. 343, 348, 901 P.2d 761, 766 (Ct.App.1995).

{38} Guest's briefing on this issue is manifestly deficient. In her brief in chief, Guest makes no argument rebutting the district court's finding that her MAP and prima facie tort claims rely on the same set of facts. Nor does she direct this Court to evidence in

the record sufficient to create a genuine issue of material fact to overcome summary judgment on this particular claim. To present an issue on appeal for review, appellants must submit argument and authority. Rule 12–213(A)(4). In her reply briefs, Guest argues for the first time that she should be given opportunity to marshal all of the evidence necessary to support her claim because factual circumstances, "some yet to be discovered[,] ... could technically involve 'legal' actions by the Defendants ... fitting the parameters of a prima facie tort claim." Because Guest raises this argument for the first time in her reply brief, we may disregard it. Rule 12–213(C) ("The appellant may file a brief in reply to the answer brief. Such brief ... shall be directed only to new arguments or authorities presented in the answer brief.").

{39} Guest also asserts in her reply brief for the first time that the facts supporting a finding of MAP and the facts supporting prima facie tort claims in this case are not identical because it is necessary for a jury to determine whether Defendants' novel claims of first impression lacked justification. *See Schmitz v. Smentowski*, 109 N.M. 386, 394, 785 P.2d 726, 734 (1990) (requiring "absence of justification or insufficient justification for the defendant's acts" as an element of prima facie tort). Assuming, arguendo, that this contention was properly raised pursuant to our rules of appellate briefing, we hold that it is without merit. We agree with the district court that the same set of facts required to prove lack of probable cause and misuse of process in the MAP context are necessary to prove lack of justification in the prima facie tort context. The undisputed facts in our discussion of MAP above support a prima facie showing that Defendants' actions were justified because Defendants had probable cause to file suit and did not engage in any overt misuse of process. Because Guest does not direct us to a genuine issue of material fact requiring determination by a jury, we affirm summary judgment on Guest's prima facie tort claim.

## CONCLUSION

{40} We have found no genuine issue of material fact sufficient to defeat the district court's grant of summary judgment on any of Guest's three claims against Defendants. Accordingly, we affirm the judgment and deny Guest's requests for sanctions, costs, and attorney fees.

{41} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and RODERICK T. KENNEDY, Judges.