This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**VINCENT A. MARCIANO,**

Plaintiff-Appellant,

v.                                                                          NO. 30,193

**STRATEGIC MANAGEMENT SOLUTIONS, LLC,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sheri A. Raphaelson, District Judge**

Timothy L. Butler
Santa Fe, NM

for Appellant

Rubin Katz Law Firm, P.C.
Frank T. Herdman
Joseph P. Turk
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

Plaintiff Vincent A. Marciano was terminated from his position at Defendant Strategic Management Solutions, LLC (SMSI). Plaintiff sued, and the district court dismissed all five counts of his complaint with prejudice pursuant to Rule 1-012(B)(6) NMRA. We examine each count in the order they were pleaded, providing background facts as necessary throughout the Opinion. We reverse in part and affirm in part.

**DISCUSSION**

We review de novo a district court's decision to dismiss a case for failure to state a claim under Rule 1-012(B)(6). *See Valdez v. State*, 2002-NMSC-028, ¶ 4, 132 N.M. 667, 54 P.3d 71. "In reviewing a district court's decision to dismiss for failure to state a claim, we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of sufficiency of the complaint." *Id.* Dismissal is only appropriate if, even viewing the facts in this manner, Plaintiff "can neither recover nor obtain relief under any state of facts provable under the claim." *Id.* (internal quotation marks omitted).

**A.    Count 1: Retaliation**

Count 1 of Plaintiff's first amended complaint was for "retaliation," which we understand to mean retaliatory discharge. To state a claim for retaliatory discharge, an employee is required to allege facts demonstrating

2

that [he was] discharged because [he] performed acts that public policy has authorized or would encourage, or because [he] refused to do something required by an employer that public policy would condemn. The employee[] must show a causal connection between [his] actions and [his] subsequent discharge. In addition, in cases involving discharge for reporting illegal activity, or "whistleblowing," employees must show that their actions furthered a public interest rather than a private one.

*Garrity v. Overland Sheepskin Co.*, 1996-NMSC-032, ¶ 15, 121 N.M. 710, 917 P.2d 1382 (citations omitted). The district court dismissed this count from the original complaint because it concluded that the count failed to allege any act in furtherance of public interest. In its dismissal of this count as pleaded in the first amended complaint, the court simply referred back to its original order of dismissal.

The district court's determination that Plaintiff engaged in no act in furtherance of public policy ignores the rules governing motions to dismiss and is contrary to the allegations in the complaint. The district court stated that there was "no indication whatsoever that . . . Plaintiff [was] going to make a complaint to an outside agency about these behaviors, *or that he was even making an internal complaint*." (Emphasis added.) However, in his original complaint, Plaintiff alleged that he had sent a letter to SMSI pointing out problems that "potentially compromise[d] the public's interest in national security." Plaintiff reiterated this allegation in his amended complaint. Three days later, Plaintiff was removed from the project he had been working on and

3

was placed on paid administrative leave. Fifteen days after sending the letter, he was terminated.

Taking the allegations as true and resolving all doubts in favor of the sufficiency of the complaint, these allegations support a claim for retaliatory discharge. The district court did not decide whether disclosing information potentially detrimental to national security is encouraged by public policy. As SMSI does not argue otherwise, we assume without deciding that it is. Plaintiff's communication to SMSI can therefore be considered to be an act in furtherance of public policy. The short time between that communication and the adverse actions against him supports a reasonable inference of a causal link. The facts as alleged could also support a determination that Plaintiff's actions were primarily in furtherance of a public, not a purely private, purpose. Whether Plaintiff can develop evidence to support these allegations is a question for the fact finder.

SMSI contends that Plaintiff's complaint is foreclosed by the district court's determination that SMSI was already aware of the alleged misconduct. We are not persuaded. The district court's reading of the original complaint is strained and contrary to our standard. The order states that Plaintiff sent a letter "to the president '. . . reminding him that . . .' the behaviors for which the senior management were disciplined '. . . are improper and potentially compromise the public's interest in

national security.[']" In fact, the complaint alleged that the letter "remind[ed] him that SMSI managers have security clearances as a requirement of doing business with DOE, LANS, and that certain behaviors on the part of senior management . . . potentially compromise the public's interest in national security." Viewing this in the light most favorable to sufficiency, Plaintiff was drawing SMSI's attention to the ramifications of management's actions on national security. Additionally, the court reasoned that the "As you are aware" language from Plaintiff's letter to SMSI showed that Plaintiff knew he was not conveying new information to SMSI. The district court took the quote out of context. The letter actually said that "As you are aware, because [SMSI] senior managers at issue have security clearances . . ., some of this behavior is decidedly not proper and potentially compromises the public's interest in national security." The letters can be reasonably interpreted to indicate that Plaintiff was only reminding SMSI that their employees had security clearances as a prelude to his complaint. When the complaint is read in the light most favorable to its sufficiency, as our standard requires, it is reasonable to construe it to allege that Plaintiff acted in furtherance of a public policy. Finally, SMSI cites no authority, and we are aware of none, that would render Plaintiff's communication ineffective if SMSI was already aware of the information in his complaint. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). We therefore reverse the dismissal of Count 1.

**B.      Count 2: Breach of Contract**

Count 2 of the first amended complaint alleged a breach of contract. The district court interpreted this count as being based on two theories: (1) that Plaintiff's at-will status was modified when he was placed on paid administrative overhead, and (2) that the discrimination and harassment policy altered Plaintiff's at-will status. The district court dismissed this count on both theories.

Generally, an employment contract for an indefinite period is terminable by either party at any time for any or no reason. *See Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 668, 857 P.2d 776, 779 (1993). However, a contract may explicitly provide otherwise. *See id.* Additionally, a restriction on an employer's ability to discharge an employee may be implied when the employer's actions are sufficient to give the employee a reasonable expectation that termination will be for good cause only. *See id.* at 672, 857 P.2d at 783.

Plaintiff failed to state a claim for breach of an express contract. He argues that an alleged promise to keep him on administrative overhead from September 16 to October 3 created an express contract. Specifically, he alleged that SMSI promised that if there was "no direct billable opportunity identified [by October 3,]" Plaintiff's employment would be terminated. Notably, Plaintiff has not alleged that SMSI promised not to terminate him. To the contrary, he has alleged a promise to terminate

6

him unless he found new work within a two-week period. From the circumstances, these facts can only reasonably be read to indicate that, far from trying to protect Plaintiff's job until October 3, SMSI was actually preparing to terminate him.

Plaintiff has also failed to state a claim for breach of an implied employment contract. As we understand it, Plaintiff's claim for breach of an implied contract is based on a draft policy for handling employee claims of harassment and the manner in which SMSI had addressed previous allegations of discrimination and harassment. Plaintiff argues that, together, SMSI's conduct and the draft policy led him to form a reasonable expectation "as to the degree and nature of any expected process, procedure[,] and discipline." Plaintiff contends that "his demotion, re[]assignment, reduction in salary, SMSI's failure to investigate[,] and other acts and omissions breached his implied contract of employment."

The circumstances as alleged do not support a reasonable belief that SMSI's ability to terminate employees was in any way restricted. Plaintiff acknowledges that the draft discrimination and harassment policy had been distributed only for purposes of review. He is careful at all times to qualify that the policy was a "draft" policy, and he does not allege that at any point prior to his termination the policy was adopted. He also does not allege that SMSI was required to adhere to the draft policy prior to

termination of employees or that the policy in any other way limited SMSI's ability to terminate employees at will.

Even if an implied contract existed, Plaintiff does not argue that it was breached by his termination. The cause of action for breach of an implied employment contract "applies only to . . . the employer's unabridged right to terminate [an] employee." *Hartbarger*, 115 N.M. at 672, 857 P.2d at 783. Accordingly, the implied cause of action could not apply to "his demotion, re[]assignment, reduction in salary, [or] SMSI's failure to investigate." Furthermore, Plaintiff does not argue that he was terminated for harassment or discrimination, but instead that SMSI failed to investigate allegations made against him. Even under our deferential standard, these allegations are insufficient to state a claim for breach of an implied employment contract. We affirm dismissal of Count 2.

**C.    Count 3: Breach of the Implied Covenant of Good Faith and Fair Dealing**

Count 3 of Plaintiff's complaint claimed that SMSI breached the implied covenant of good faith and fair dealing. As Plaintiff acknowledges, "no such covenant exists if the employment relationship is at-will." *See Silva v. Am. Fed'n of State, Cnty. & Mun. Employees*, 2001-NMSC-038, ¶ 10, 131 N.M. 364, 37 P.3d 81. As we have held that Plaintiff did not allege facts that would support a claim of breach of an express or implied employment contract, his employment was at-will. He

therefore has no cause of action for breach of the implied covenant of good faith and fair dealing.

## D.    Count 4: Tortious Interference

Count 4 of Plaintiff's complaint is for tortious interference with prospective or existing contractual relations.  Interference with prospective contracts and with existing contracts are separate claims, *Guest v. Berardinelli*, 2008-NMCA-144, ¶ 32, 145 N.M. 186, 195 P.3d 353, and we therefore address them separately.

To state a claim for intentional interference with an existing contractual relation, Plaintiff was required to allege that (1) SMSI had knowledge of a contract between Plaintiff and H&P, Inc.; (2) performance of the contract was refused; (3) SMSI played an active and substantial part in causing Plaintiff to lose the benefits of the contract; (4) damages flowed from the breached contract; and (5) SMSI induced the breach without justification or privilege.  Additionally, Plaintiff must allege that SMSI interfered either through improper means or improper motive.  *Id.*

Plaintiff alleged that he entered into a contract with H&P to perform services for H&P on the CMRR project.  Performance of this contract was contingent on Plaintiff "being able to work things out with SMSI."  Plaintiff indicated that he had discussed with his supervisor the possibility of working on the CMRR project through H&P.  Plaintiff also alleged that SMSI met with CMRR and that, as a result, CMRR forbid Plaintiff to participate in the CMRR project through H&P.  Although poorly pleaded, we believe that Plaintiff has also alleged an improper motive—retaliation for

10

his comments to SMSI's president about the behavior of senior management. These allegations are sufficient to overcome the low barrier of a motion to dismiss.

We see no indication in the pleadings that any prospective contract existed. However, a contract to be an at-will employee is treated as a prospective contract. *See Zarr v. Wash. Tru Solutions, LLC*, 2009-NMCA-050, ¶ 17, 146 N.M. 274, 208 P.3d 919. To state a claim for intentional interference with prospective contractual relations, Plaintiff was required to allege that SMSI damaged him "by either (1) inducing or otherwise causing [H&P] not to enter into or continue a prospective relation with [him] or (2) preventing [him] from acquiring or continuing a prospective relation with [H&P]." *Guest*, 2008-NMCA-144, ¶ 32. To the extent that Plaintiff's alleged contract with H&P was for at-will employment, the allegations that support his claim for intentional interference with an existing contract are also sufficient, when taken as true, to state a claim for intentional interference with a prospective contractual relation. We therefore reverse the dismissal of Count 4 as to both the express and prospective contract claims.

**E.      Count 5: Prima Facie Tort**

Count 5 of Plaintiff's complaint, pleaded in the alternative, was for prima facie tort.  To state a claim for prima facie tort, Plaintiff was required to allege "1.  An intentional, lawful act by [SMSI]; 2.  An intent to injure the [P]laintiff; 3.  Injury to [P]laintiff; and 4. [A lack] of justification or insufficient justification for [SMSI's] acts." *Schmitz v. Smentowski*, 109 N.M. 386, 394, 785 P.2d 726, 734 (1990).  Any of the allegations we have identified to support reversal of the above counts are also sufficient to state a claim for prima facie tort as an alternative theory.  Accordingly, we reverse the dismissal of Count 5.

**CONCLUSION**

For the foregoing reasons, we reverse the district court's order dismissing Counts one, four, and five.  We affirm the order as to the dismissal of Counts two and three and remand for further proceedings consistent with this Opinion.

**IT IS SO ORDERED**.

_____

**MICHAEL D. BUSTAMANTE, Judge**

12

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**JONATHAN B. SUTIN, Judge**