**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 2, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

FRANKLIN D. AZAR & ASSOCIATES,
P.C.,

     Plaintiff - Appellant,

v.

KEVIN EGAN,

     Defendant - Appellee.

No. 19-2008
(D.C. No. 1:17-CV-00869-JAP-SCY)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **EID**, **KELLY**, and **CARSON**, Circuit Judges.

_____

Franklin D. Azar & Associates, P.C. ("FDA") sued Kevin Egan after he helped

a longtime family friend, who was represented by FDA, find substitute counsel for

her personal injury litigation. FDA asserted claims for tortious interference with

contract and a prima facie tort. The district court granted summary judgment in

Mr. Egan's favor, finding that he had negated essential elements of the claims with

unrefuted evidence. It simultaneously denied FDA's request to defer consideration

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

of the summary judgment motion under Fed. R. Civ. P. 56(d) pending a deposition of Mr. Egan. FDA now appeals both rulings. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    Background

In December 2010, Veronica Loya engaged FDA to file a personal injury action after her husband, Fidencio, was severely injured in a workplace accident. Operating under a contingency fee agreement, FDA filed an original and amended complaint and began to conduct discovery. But by May 2012, Ms. Loya became dissatisfied with the representation provided by FDA; she felt that the case was taking too long to resolve, and she was concerned because the primary attorney assigned to her case was leaving the firm.

Ms. Loya decided to hire a new attorney, so she asked Fidencio's worker's compensation attorneys for a referral. She also sought advice from Mr. Egan, who had employed her as a housekeeper and who had been a longtime family friend since 2004. Mr. Egan shared Ms. Loya's concerns over the handling of the case and expressed a distaste for law firms like FDA that advertise on billboards. Mr. Egan ultimately recommended two attorneys to Ms. Loya, one of whom was also recommended by the worker's compensation firm. Ms. Loya hired both attorneys, terminated FDA, and signed a new contingency fee agreement with the substitute counsel in June 2012. She later testified that she "made [her] own decisions" in this regard. Aplt. App. at 74.

2

The substitute counsel settled the personal injury action. FDA then filed two separate proceedings to try to recover its attorney's fees: (1) an equitable apportionment proceeding within the personal injury action, in which FDA sought actual fees for work performed during the lawsuit's early stages; and (2) a state-court tort case against the substitute counsel alleging wrongful interference with FDA's contract with Ms. Loya, in which FDA sought the full amount of its anticipated fees. Within the latter proceeding, Mr. Egan was deposed on three separate dates: August 25, 2014; April 2, 2015; and July 29, 2015. The record also references a fourth deposition in March 2015, which was called off by Mr. Egan's counsel due to the possibility that FDA might sue his client. Ultimately, both proceedings settled.

In 2017, FDA again sought to recover the full amount of its anticipated fees for the personal injury action by filing this lawsuit against Mr. Egan. FDA asserted claims for tortious interference with contract and a prima facie tort under New Mexico state law. The district court granted summary judgment in Mr. Egan's favor and refused to postpone its ruling to allow FDA to depose Mr. Egan within this litigation. FDA filed this timely appeal.

## II.     Analysis

### A.     Summary Judgment

We review the grant of summary judgment de novo, applying the same standard the district court applied. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

3

Fed. R. Civ. P. 56(a). When applying this standard, "[w]e must view facts in the light most favorable to the non-moving part[y]" and "resolv[e] all factual disputes and reasonable inferences in [its] favor." *Cillo*, 739 F.3d at 461 (internal quotation marks omitted).

### 1. Tortious Interference with Contract

It is "not easy" to establish tortious interference with contract under New Mexico law. *Guest v. Berardinelli*, 195 P.3d 353, 363 (N.M. Ct. App. 2008) (internal quotation marks omitted). The parties agree that FDA's contingency fee agreement is an at-will contract, such that FDA must satisfy the elements for interference with a prospective contract as opposed to interference with an existing contract. *See id.* (distinguishing between these claims and outlining the elements for each). To prove tortious interference with an at-will contract, a plaintiff must prove that the defendant interfered with the contract with an improper motive or through improper means. *Id.* A plaintiff must also prove causation—in other words, that the contract would not have been terminated but for the defendant's interference. *Wolf v. Perry*, 339 P.2d 679, 682 (N.M. 1959). The district court found that FDA could not establish either of these elements and thus granted summary judgment on this claim. We agree that summary judgment is appropriate.

FDA has not demonstrated a genuine dispute as to a material fact for the requirement that Mr. Egan acted with an improper motive or through improper means.[1]

---

[1] We address both theories despite Mr. Egan's contention that FDA "has not relied on a claim of improper means," Aplee. Resp. Br. at 11, and the district court's position

To the extent FDA proceeds on an improper-motive theory, it cannot succeed without showing that Mr. Egan's *sole* motive for interfering with the agreement was a desire to harm FDA. *See Fikes v. Furst*, 81 P.3d 545, 552 (N.M. 2003) (stating that a claim for interference with an at-will contract requires a showing that the defendant's sole motive was to harm the plaintiff); *see also Zarr v. Washington Tru Sols., LLC*, 208 P.3d 919, 923 (N.M. Ct. App. 2009) (characterizing "the sole-motive-to-harm-requirement" as "enshrined in [New Mexico] Supreme Court authority"). FDA speculates that Mr. Egan's "distaste for 'billboard lawyers'" motivated him to sever the relationship between FDA and Ms. Loya. *See* Aplt. Opening Br. at 33-34; *see also* Aplt. App. at 106 (response to summary judgment motion). But as the district court thoroughly explained, *see* Aplt. App. at 267, the record contains undisputed evidence that Mr. Egan was at least partly motivated by his desire to assist Ms. Loya and her family, with whom he had a lengthy relationship. Against this backdrop, evidence of Mr. Egan's admitted distaste for FDA's advertising practices does not create a genuine issue of material fact as to motive.

To the extent FDA proceeds on an improper-means theory, it cannot overcome the causation requirement. According to FDA, Mr. Egan persuaded Ms. Loya to terminate the contingency fee agreement through false representations and mischaracterizations. Improper means do include "deceit or misrepresentation." *M &*

---

that "Plaintiff has not alleged that Defendant acted through any improper means," Aplt. App. at 267. The parties' discovery plan and the summary judgment briefs show that FDA did articulate this alternative theory.

*M Rental Tools, Inc. v. Milchem, Inc.*, 612 P.2d 241, 246 (N.M. Ct. App. 1980) (internal quotation marks omitted). But FDA's conjecture that Ms. Loya's "dissatisfaction was arguably based in large part on misinformation . . . received from Mr. Egan," Aplt. Opening Br. at 35, is not enough to meet the summary judgment standard. Ms. Loya testified that she was unhappy with FDA's representation and asked multiple sources for recommendations for substitute counsel. She also testified that she "made [her] own decisions" as to whether to switch attorneys. Aplt. App. at 74. As the district court explained in detail, *see id.* at 268, FDA has not presented evidence to create a genuine issue of material fact as to whether Mr. Egan's actions were the but-for cause of Ms. Loya's decision to terminate the agreement.

For these reasons, Mr. Egan is entitled to summary judgment on FDA's tortious interference with contract claim.

### 2. Prima Facie Tort

The district court also granted summary judgment on FDA's prima facie tort claim, reasoning that FDA cannot satisfy two elements of this claim—-namely, "an intent to injure the plaintiff" and "injury to the plaintiff resulting from the intentional act," *id.* Because these elements overlap with the elements of FDA's intentional interference with contract claim, the district court's analysis was similar too. First, FDA cannot satisfy the intent-to-harm element of this claim because Mr. Egan "has offered well-supported reasons for his actions" that justify why he gave advice to Ms. Loya, *id.* at 269. And second, FDA cannot prove causation because "[i]t is undisputed that Ms. Loya sought advice from her husband's workers' compensation

6

attorneys regarding attorney referrals as well as from [Mr. Egan], and that it was Ms. Loya's decision to hire substitute counsel." *Id.* We agree with the district court's thoughtful analysis.

Furthermore, the district court correctly noted that the prima facie tort claim is based on the same alleged conduct as the intentional interference claim. New Mexico courts have made clear that "[p]rima facie tort has no application" where a plaintiff "was unable to establish a claim under intentional interference with contract." *Bogle v. Summit Inv. Co.*, 107 P.3d 520, 529 (N.M. Ct. App. 2005); *see also Beaudry v. Farmers Ins. Exch.*, 412 P.3d 1100, 1104 (N.M. 2018) (stating that courts must "make certain that the plaintiff's prima facie tort is not being used to evade stringent requirements of other established doctrines of law" (internal quotation marks omitted)); *Guest*, 195 P.3d at 364 ("Prima facie tort is not intended to be a 'catch-all' alternative for every action that cannot stand on its own legs.").

For these reasons, Mr. Egan is entitled to summary judgment on FDA's prima facie tort claim.

B.    Discovery

FDA also challenges the district court's refusal to defer its summary judgment ruling to allow FDA to depose Mr. Egan within this litigation. Rule 56(d) permits such a deferral "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d)(1). FDA argued that it needed to obtain additional information regarding Mr. Egan's intent, conduct, and motivation. But the district court found a delay was

"not justified" because "Plaintiff has already deposed Defendant three times, has inquired during the depositions about the issues in this case, and was considering filing suit against Defendant at the time the earlier depositions were taken." Aplt. App. at 267. *Id.*; *see also id.* at 265 (noting that "during the depositions Plaintiff inquired into Defendant's role in Ms. Loya's decision to terminate Plaintiff's representation"). The district court also reasoned that a deposition to explore Mr. Egan's motive was unwarranted because the sole-motive-to-harm requirement was already defeated by "undisputed evidence of [Mr. Egan's] lengthy relationship with Ms. Loya and her family, his concern that she receive good legal representation, his offers to assist her with legal fees or other costs, and his lack of any financial or personal benefit from Ms. Loya's decision to retain new counsel." *Id.* at 267.

"We review the district court's denial of a Rule 56(d) motion for an abuse of discretion." *Trans-W. Petroleum, Inc. v. U.S. Gypsum Co.*, 830 F.3d 1171, 1175 (10th Cir. 2016); *see also Punt v. Kelly Servs.*, 862 F.3d 1040, 1047 (10th Cir. 2017) (explaining that "[c]ontrol of discovery is entrusted to the sound discretion of the trial courts" (internal quotation marks omitted)). A district court abuses its discretion if it "bases its ruling on an erroneous conclusion of law or relies on clearly erroneous fact findings." *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1192 (10th Cir. 2015) (internal quotation marks omitted). "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made." *Id.* (internal quotation marks omitted).

8

We discern no abuse of discretion here.  It is clear from the record that FDA had a sufficient opportunity to depose Mr. Egan during the earlier state-court proceeding, at a time when it was contemplating filing this lawsuit.  Furthermore, the outcome of the summary judgment motion would have been the same, given the undisputed evidence defeating the intent-to-harm and causation requirements for both claims.

### III.    Conclusion

Accordingly, we affirm the district court's decision.

Entered for the Court


Joel M. Carson III
Circuit Judge

9