This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-33109**

**ANGELA MCGREGOR, PAUL MCGREGOR;
TINA MONTGOMERY; THE T.J. MONTGOMERY
IRREVOCABLE TRUST; PAUL MCGREGOR
and ANGELA MCGREGOR, as Trustees of
THE PAUL MCGREGOR AND ANGELA
MCGREGOR REVOCABLE TRUST OF 1992;
GLENDA MCGREGOR, as Trustee of THE
MCGREGOR CLOVIS GST TRUST; GLENDA
MCGREGOR, as Trustee of THE MCGREGOR
AMARILLO GST TRUST; GLENDA MCGREGOR,
as Trustee of THE MCGREGOR LUBBOCK GST
TRUST; M&M COMMERCIAL CONSTRUCTION
LLC, a New Mexico limited liability company; INN I,
LTD., a Texas limited partnership; INN II, LTD.,
a Texas limited partnership; AMT ENTERPRISES,
INC., a New Mexico corporation; PAT MANAGEMENT,
LLC, successor to West Texas Inns, Inc., a Texas
corporation, successor to Inns, Inc., a New Mexico
corporation; TEXAS LEISURE, LLC, a Texas limited
liability company and successor to New Mexico
Leisure, Inc., and White Sands Inns, Inc., a New
Mexico corporation; CLOVIS INN INC., a Texas
corporation and successor to Clovis Inn, Inc., a
New Mexico corporation; THE AMANDA
MONTGOMERY IRREVOCABLE TRUST; and
P. MCGREGOR ENTERPRISES, INC.,**

       Plaintiffs-Appellants,

v.

**PLATINUM BANK f/n/a TEXSTAR BANK
OF LUBBOCK, a branch of the First
National Bank of Monahans, Texas; and
GREG GARRETT,**

       Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nan G. Nash, District Judge**

Steven K. Sanders & Associates, LLC
Steven K. Sanders
Albuquerque, NM

for Appellants

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Martha G. Brown
Elizabeth A. Martinez
Albuquerque, NM

for Appellees

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** The memorandum opinion filed in this case on October 19, 2020, is hereby withdrawn and this opinion is substituted in its place. Plaintiffs Angela and Paul McGregor, along with a number of their related corporate and trust entities, appeal from the district court's grant of summary judgment in favor of Defendants Greg Garrett and Platinum Bank. We hold that the district court properly granted summary judgment on all matters and affirm.

## BACKGROUND

### A.     Factual Background

**{2}** Plaintiffs allege Defendants committed a variety of wrongs during the course of two loan transactions for Plaintiffs' hotel construction projects in Amarillo, Texas, and Clovis, New Mexico, in 2003 and 2005, respectively. We begin with an overview of the transactions before turning to Plaintiffs' arguments on appeal.

### 1.     Amarillo Loan

**{3}** In 2001, Plaintiffs obtained a $4 million loan from State National Bank to build a new hotel in Amarillo. Two years later, Plaintiffs obtained a $1.5 million personal loan from TexStar Bank (TexStar), the Lubbock branch of First National Bank of Monahans, for cost overruns, furniture, and fixtures for the Amarillo hotel. Over the next few months, TexStar refinanced Plaintiffs' $4 million loan with State National Bank for the permanent financing of the Amarillo hotel. As part of that transaction, Plaintiffs rolled the $1.5 million personal loan into the loan package, resulting in a total loan of $5.5 million. Garrett, who had provided banking services to Plaintiffs for over a decade, was the president of TexStar at the time and worked directly with Plaintiffs on the Amarillo loans.

**{4}** Although Garrett did not require any security for the $1.5 million loan—it was a "signature loan"—Plaintiffs apparently offered to secure the loan with deeds of trust on another hotel property they owned in Clovis. Garrett represented to Plaintiff Angela McGregor that he would record the deeds of trust for both properties "within about ninety days" after they were signed. Plaintiffs ultimately executed two deeds of trust on the Clovis property—one for $1 million and another for $500,000—and Garrett recorded both deeds of trust on June 18, 2003, about two weeks before Plaintiffs finalized the $5.5 million loan package on July 2, 2003. According to Plaintiffs, the liens proved problematic three years later when, during the course of their next construction loan with Garrett and TexStar for the Clovis property, the liens delayed their ability to obtain a title policy, causing damages.

## 2. Clovis Loan

**{5}** In May 2005, TexStar agreed to lend Plaintiffs $3 million for the construction of a new hotel and the remodel of an existing hotel on Plaintiffs' Clovis property. At some point, Plaintiffs asked Garrett to increase the loan amount, and he obtained approval to lend Plaintiffs $3.7 million. Attorney Sam Hawthorne, who represented both TexStar and Plaintiffs in the transaction, prepared the documents. Plaintiffs signed a set of loan documents in July 2005 and delivered them to Hawthorne, who then delivered the loan documents to TexStar for review. With Garrett's verbal permission, Plaintiffs began construction.

**{6}** In August, TexStar requested a number of changes and corrections to the loan documents before it would finalize the loan. The final loan documents apparently included terms stating that (1) Plaintiffs "would acquire title insurance insuring that TexStar had a valid first lien on the property"; (2) "no work would occur on the property before TexStar's lien was filed that would encumber TexStar's first lien"; and (3) "TexStar would not be obligated to make any loan advances until TexStar's deed of trust had been recorded as the first lien prior to commencement of any construction on the properties, and a title policy . . . had been issued[.]"[1] Hawthorne was to obtain the title insurance policy and ensure TexStar's liens were recorded. All parties signed the loan documents in October 2005, after Garrett received assurances that "all construction work had stopped, the contractors, sub-contractors, and suppliers had been paid in full, no lien claims for prior work or materials existed, and lien waivers were provided to TexStar."

**{7}** TexStar funded construction draws in November, December, and January in excess of $800,000. In January 2006, however, TexStar discovered that no title policy had been issued and the deed of trust and other security agreements had not been recorded. Garrett notified Plaintiffs that TexStar would not advance additional funds until

---

[1]These terms were stated in Garrett's affidavit, attached to Defendants' first motion for summary judgment, and were not disputed by Plaintiffs. The parties have not provided a citation indicating that the actual loan documents are included in the thirteen-volume record proper.

Plaintiffs fulfilled those obligations. Plaintiffs obtained the title policy and TexStar's security agreements were recorded by the end of March of 2006.

**{8}** Plaintiffs contend that the 2003 deeds of trust on the Clovis property—TexStar's security for the Amarillo loan—delayed their ability to secure the necessary title policy for the Clovis loan because the title company would not issue a policy until those liens were released. In the interim, Plaintiffs opted to continue construction using their own funds during the months of February, March, and April. TexStar resumed Plaintiffs' draw requests in April and reimbursed Plaintiffs for the funds spent from their personal account to continue construction.

**{9}** Later that year Garrett entered into an acquisitions agreement to purchase TexStar from First National Bank of Monahans and began doing business as Platinum Bank on June 25, 2007. As part of the buyout, Platinum purchased Plaintiffs' Amarillo and Clovis loans. By January 2008, Plaintiffs had paid their loans with Platinum in full.

## B. Procedural Background

**{10}** Plaintiffs filed suit against Garrett and Platinum[2] on November 26, 2008, asserting claims of negligent misrepresentation, intentional misrepresentation and fraud, breach of the implied covenant of good faith and fair dealing, and prima facie tort.[3] Plaintiffs alleged myriad problems, including that Garrett misrepresented that he would not record the deeds of trust on the Clovis property for ninety days during the Amarillo loan transaction, and that during the course of the Clovis loan transaction Garrett misrepresented the amount of money Defendants were willing to lend Plaintiffs, delayed the final Clovis loan documents (and concealed documents previously executed by Plaintiffs), which, in combination with Garrett telling them they could commence construction, resulted in a higher interest rate and a higher title policy premium. Plaintiffs allege that Defendants' conduct was designed to allow them to foreclose on the Clovis loan and obtain the property for the bank, though it is undisputed Defendants never did so.

### 1. First Motion for Summary Judgment

**{11}** After four years of litigation, Defendants collectively filed a motion for summary judgment, arguing that Garrett had not committed any act or omission giving rise to legal liability and that his actions had not caused Plaintiffs any damages. Defendants argued that Platinum was also entitled to summary judgment to the extent Plaintiffs' claims against the bank were grounded in a theory of respondeat superior liability for Garrett's actions. Defendants argued in the alternative that Platinum was entitled to

---

2Plaintiffs also sued Mr. Hawthorne but those claims are not part of this appeal.
3Plaintiffs originally included claims of breach of contract against all defendants but clarified in their discovery responses that this claim was only against Hawthorne. Likewise, Plaintiffs alleged a claim of civil conspiracy but later filed a stipulated order dismissing the claim.

summary judgment because all of the alleged conduct occurred before Platinum purchased TexStar and Platinum did not assume any of TexStar's liabilities.

{12}    Following a hearing on the motion, the district court granted summary judgment in favor of Platinum on all claims, concluding that Platinum is not legally responsible for TexStar's liabilities. With respect to Garrett, the district court granted summary judgment on Plaintiffs' claims for breach of the duty of good faith and fair dealing and prima facie tort, as well as on all claims arising out of the Amarillo loan. The court found, however, that genuine issues of material fact existed regarding liability and damages on the Clovis loan claims that precluded summary judgment on Plaintiffs' remaining causes of action for negligent misrepresentation and intentional misrepresentation.

## 2.    Second and Third Motions for Summary Judgment

{13}    After conducting additional discovery, Garrett filed separate motions for partial summary judgment on Plaintiffs' remaining claims—one based on the Amarillo loan claims and the other on the Clovis loan claims. The district court granted Garrett's motion on the Clovis loan claims at the hearing, finding that two elements of Plaintiffs' misrepresentation claims failed as a matter of law. After initially taking the remaining motion under advisement, the district court granted summary judgment in favor of Garrett on the Amarillo loan claims as well.

## DISCUSSION

## A.    Choice of Law and Standard of Review

{14}    The district court determined that Texas law applies to Plaintiffs' tort claims because all of Garrett's conduct took place in Texas. *Terrazas v. Garland & Loman, Inc.*, 2006-NMCA-111, ¶ 12, 140 N.M. 293, 142 P.3d 374 ("New Mexico courts follow the doctrine of *lex loci delicti commissi*—that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred."). The district court also determined that Plaintiffs' contract claims would be governed by the choice of law provisions in the parties' loan contracts. Plaintiffs challenge the district court's choice of law conclusions for the first time in their reply brief and for that reason, we decline to consider the argument. *Guest v. Berardinelli*, 2008-NMCA-144, ¶ 36, 145 N.M. 186, 195 P.3d 353 ("[W]e do not consider arguments raised in a reply brief for the first time.").

{15}    While Texas law governs the parties' substantive rights, "the law of the forum governs matters of procedure." *Nez v. Forney*, 1989-NMSC-074, ¶ 4, 109 N.M. 161, 783 P.2d 471. New Mexico appellate courts "review an order granting summary judgment de novo." *Wilde v. Westland Dev. Co., Inc.*, 2010-NMCA-085, ¶ 12, 148 N.M. 627, 241 P.3d 628. Summary judgment is appropriate if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Gardner-Zemke Co. v. State*, 1990-NMSC-034, ¶ 11, 109 N.M. 729, 790 P.2d 1010. "The burden is first on the moving party to make a prima facie showing that there is no genuine issue of fact as to one or more of the requisite elements in [the] non-movant's claim." *Bartlett v. Mirabal*,

2000-NMCA-036, ¶ 17, 128 N.M. 830, 999 P.2d 1062 (alteration, internal quotation marks, and citation omitted). "Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Roth v. Thompson*, 1992-NMSC-011, ¶ 17, 113 N.M. 331, 825 P.2d 1241. "On review the court must consider the whole record for evidence that puts a material fact at issue." *Gardner-Zemke Co.*, 1990-NMSC-034, ¶ 11.

## B.      Claims Against Platinum

**{16}**    Defendants sought summary judgment on all claims against Platinum on the basis that Platinum is not legally responsible for its predecessor, TexStar's, liabilities. Defendants relied on the discussion of successor liability in *Garcia v. Coe Mfg. Co.*, 1997-NMSC-013, 123 N.M. 34, 933 P.2d 243, where our Supreme Court noted the general rule in New Mexico is that "a successor corporation that purchases the assets of another corporation is, with four exceptions, not responsible for its predecessor's debts and liabilities." *Id.* ¶ 2.[4] "[T]he four traditional exceptions to application of the rule precluding liability [are]: (1) where there is an agreement to assume those obligations; (2) where the transfer results in a consolidation or merger; (3) where there is a continuation of the transferor corporation; or (4) where the transfer is for the purpose of fraudulently avoiding liability." *Id.* ¶ 12 (internal quotation marks and citation omitted). The *Garcia* Court elaborated on the third exception, stating, "[g]enerally, a continuation of the transferor corporation occurs where there is (1) a continuity of directors, officers, and shareholders; (2) continued existence of only one corporation after sale of the assets; and (3) inadequate consideration for the sale of the assets." *Id.* ¶ 13.

**{17}**    Defendants addressed each of the four exceptions to non-liability as "undisputed material facts" in their motion and argued that none of the exceptions were applicable to Platinum's purchase of TexStar. Defendants supported their allegations with an affidavit sworn by Garrett on behalf of Platinum and a copy of the Purchase and Assumption Agreement. We hold that Defendants' showing was sufficient to make a prima facie case for summary judgment.

**{18}**    Plaintiffs assert generally that "Platinum Bank is responsible for the actions of Garrett and TexStar Bank because it purchased the assets of TexStar Bank, including the loan at issue." Plaintiffs stated that "Garrett was the President of TexStar Bank of Lubbock. That Bank does not exist any longer. Defendant Platinum has admitted that the loans that were made by TexStar Bank to the McGregors were transferred to Platinum Bank." Plaintiffs also alleged that

---

[4]Defendants argued that the result is the same under Texas law. *See, e.g., E-Quest Mgmt., LLC v. Shaw*, 433 S.W.3d 18, 24 (Tex. App. 2013) (stating that "Texas law authorizes a successor to acquire the assets of a corporation without incurring any of the grantor corporation's liabilities unless the successor expressly assumes those liabilities"). Plaintiffs made no argument to either court with respect to Texas law, relying instead solely on *Garcia*, as do we.

Garrett is President of Platinum Bank and was President of TexStar Bank, Lubbock. All employees of TexStar Bank that worked with the McGregors were the same as worked for Platinum Bank. TexStar Bank of Lubbock went out of business with the commencement of Platinum Bank. Plaintiff's account numbers did not change.

**{19}** While Plaintiffs did not clearly identify any of the *Garcia* exceptions, these facts relate, if at all, only to the third exception—whether there was a continuation of the transferor corporation. But Plaintiffs presented no evidence that inadequate consideration supported Platinum's purchase of TexStar, and although Plaintiffs asserted that TexStar Lubbock no longer exists, they failed to address or rebut Defendants' factual allegations that TexStar was merely a branch of First National Bank of Monahans and that First National Bank continued to exist after the sale.

**{20}** The record contains additional, undisputed evidence tending to establish that Platinum was not a mere continuation of TexStar. Just twenty-eight days after Plaintiffs filed this lawsuit, an attorney representing TexStar Bank wrote to Plaintiffs' counsel, stating

I have not yet had the opportunity to review your Complaint in detail, but it appears that the same seeks relief from Platinum Bank in Lubbock, Texas which is stated to have formerly done business as TexStar Bank. In fact, Platinum Bank and TexStar Bank are and have always been separate business entities. Platinum Bank purchased the Lubbock, Texas assets of TexStar Bank several years ago.

**{21}** The letter went on to say that "no formal service of process has been accomplished on TexStar Bank and this may be because you only intended to sue Platinum Bank." TexStar's counsel informed Plaintiffs that if he was incorrect about TexStar's noninvolvement, he was authorized to accept service on TexStar's behalf. In spite of this, "Plaintiffs never sought to amend their Complaint to sue TexStar Bank or First National Bank of Monahans, Texas." Plaintiffs did not controvert these allegations.

**{22}** Given this, Plaintiffs have not demonstrated a disputed issue of fact regarding any of the *Garcia* exceptions that would preclude summary judgment in favor of Platinum, nor did they establish that any of the *Garcia* exceptions apply here in their favor as a matter of law. To the extent Plaintiffs also rely on *Garcia*'s discussion of the "product-line" exception, which "seeks to establish whether there is a substantial continuity in the *products* resulting from the pretransaction and posttransaction use of the predecessor's assets," 1997-NMSC-013, ¶ 15 (alteration, internal quotation marks, and citation omitted), Plaintiffs have not shown how that exception is applicable outside of the products liability context or why *Garcia*'s policy analysis should be extended to the facts of this case. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them. . . . It is of no benefit either to the parties or to future litigants for this Court to promulgate case law

based on our own speculation rather than the parties' carefully considered arguments."). For these reasons, we affirm the district court's entry of summary judgment in favor of Platinum on all claims.

## C.  Claims Against Garrett

**{23}**  Before turning to the substance of Plaintiffs' claims against Garrett, we note that Plaintiffs failed to identify which causes of action are at issue on appeal. *See* Rule 12-318(A)(4) NMRA (stating that the brief in chief shall contain "an argument which, *with respect to each issue presented*, shall contain a statement of the applicable standard of review, the contentions of the appellant, and a statement explaining how the issue was preserved in the court below, with citations to authorities, record proper, transcript of proceedings, or exhibits relied on" (emphasis added)). Defendants' answer brief observes that Plaintiffs offered no argument regarding their claims for breach of the duty of good faith and fair dealing or prima facie tort in their brief in chief, and Plaintiffs did not challenge this contention in their reply brief. Having effectively abandoned those claims on appeal, we confine our review to Plaintiffs' misrepresentation claims. *See Guest*, 2008-NMCA-144, ¶ 35.

## 1.  Recording of Deeds of Trust on Plaintiffs' Clovis Property

**{24}**  Plaintiffs alleged that during the course of the Amarillo loan transaction, Garrett stated that he would not file the mortgage on the Clovis property for ninety days, "during which time the parties would complete the loan package for the Amarillo Hotel and if it was completed, then the lien would not be filed." Plaintiffs complain that Garrett recorded the liens on June 18, 2003, even though they completed the Amarillo loan documents two weeks later on July 2, 2003.

**{25}**  When Garrett moved for partial summary judgment on the Amarillo loan claims, he argued that the negligent and intentional misrepresentation claims failed as a matter of law because (1) his representation was not false, and (2) Plaintiffs suffered no pecuniary loss in reliance on the representation. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) ("A fraud cause of action requires a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." (internal quotation marks and citation omitted)); *Willis v. Marshall*, 401 S.W.3d 689, 698 (Tex. App. 2013) (stating that Texas has for more than twenty years embraced the elements of negligent misrepresentation set forth in the Restatement (Second) of Torts § 552 (1977), which include (1) the "defendant's providing false information for the guidance of others"; and (2) the "plaintiff's justifiable reliance on [the] defendant's representation"). Garrett asserted as "undisputed material facts":

> 1.  The *only* conversations Mrs. McGregor had with Mr. Garrett concerning the recording of the deeds of trust . . . were that the deeds

of trust would be filed and recorded within about 90 days after they were *signed*.

    2.  The deeds of trust (dated February 18, 2003 and March 21, 2003) were recorded on June 18, 2003.

    3.  Even if Mr. Garrett agreed not to record the deeds of trust for 90 days, in fact, he did not record them until 90 days had passed.

(Emphasis added.) In support of these facts, Garrett attached copies of the recorded deeds of trust and Plaintiffs' discovery responses as exhibits to his motion.

**{26}** Initially, Garrett addressed Plaintiff Angela McGregor's claim that the deeds of trust would not be recorded at all. Though she testified, "Frankly, I did not think that—I expected them not to be recorded because it was going to be so close to the time we were doing the permanent financing," she also admitted that she never had any conversations with Garrett to that effect. Her deposition testimony confirmed that the only conversation she had with Garrett was that the deeds of trust would be filed approximately ninety days after execution.

**{27}** With respect to Garrett's argument that his representation was not false, his exhibits show that the $1 million deed of trust was recorded more than ninety days after it was signed. Though Garrett repeatedly cited to the dates the deeds of trust were prepared (February 18 and March 21, respectively), rather than the dates when they were signed, the documents attached to his motion show that the last signor to execute the documents (Plaintiff Glenda McGregor on behalf of the trust) signed the $1 million deed of trust on March 18, 2003, and the $500,000 deed of trust on April 8, 2003. Both deeds of trust were recorded on June 18, 2003—ninety-two days after the $1 million lien was executed and seventy-one days after the $500,000 lien was executed. Garrett's evidence was therefore sufficient to negate the element of falsity as to any misrepresentation claims involving the $1 million deed of trust. *Blauwkamp v. Univ. of N.M. Hosp.*, 1992-NMCA-048, ¶ 14, 114 N.M. 228, 836 P.2d 1249 ("A defendant seeking summary judgment . . . bears the initial burden of negating at least one of the essential elements upon which the plaintiff's claims are grounded.").

**{28}** The timely recording of the $1 million deed of trust also serves to negate the element of pecuniary loss, notwithstanding any factual dispute regarding the recording of the $500,000 deed of trust. *See Guest*, 2008-NMCA-144, ¶ 24 (stating that disputed facts, even if they are determined by a jury in the non-movant's favor, are insufficient to defeat summary judgment if they could not support the claim in light of the undisputed facts). Plaintiffs claim that the liens on the Clovis property were an impediment to securing title insurance in conjunction with the 2005 Clovis loan transaction and caused damages, including lost room revenue and the loss of use of their own funds. But because the $1 million deed of trust was properly recorded, the delay Plaintiffs complain of would have occurred regardless of Garrett's improper recording of the $500,000 deed of trust. Plaintiffs did not claim that the $500,000 deed of trust caused any delay or damages separate and apart from the $1 million deed of trust, and consequently, we

hold that Garrett's evidence was sufficient to negate the element of pecuniary loss as well.

**{29}** In their response to Garrett's motion for partial summary judgment, Plaintiffs did not dispute Garrett's factual allegations, nor did they address Garrett's legal arguments.[5] After hearing argument on the motion, the district court found:

1. Plaintiffs do not contradict the facts set forth in Garrett's Motion for Partial Summary Judgment. The facts are therefore undisputed.

2. Plaintiffs have conceded that the representation made by Garrett was not false.

3. Plaintiffs have no cognizable claim that they suffered any pecuniary loss by relying on any alleged representation by Garrett.

**{30}** On appeal, Plaintiffs recite their factual allegations but have not offered any argument or authority to explain why summary judgment was improperly granted on this claim. *See Elane Photography, LLC*, 2013-NMSC-040, ¶¶ 70-71 (stating that an appellant must submit argument and authority to present an issue on appeal); *Guest*, 2008-NMCA-144, ¶ 35 (stating that the non-movant provided her version of the facts without explaining why summary judgment was improperly granted, and "[g]eneral assertions of the existence of a triable issue are insufficient to overcome summary judgment on appeal"). We affirm the district court's grant of summary judgment on the Amarillo loan claims.

---

5Plaintiffs' four-page response to Garrett's motion for summary judgment on the Amarillo loan claims contained no mention or acknowledgment of Garrett's argument regarding the recording of the deeds of trust. *See* Rule 1-056(D)(2) NMRA ("A memorandum in opposition to the motion shall contain a concise statement of the material facts as to which the party contends a genuine issue does exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and shall state the number of the moving party's fact that is disputed. *All material facts set forth in the statement of the moving party's motion shall be deemed admitted unless specifically controverted.*" (emphasis added)). On appeal, Plaintiffs point out that they had attached an unsworn statement signed by Plaintiff Angela McGregor as an exhibit to their response to Defendants' *original* motion for summary judgment one year earlier, which stated that "Garrett "represented to Angela McGregor that the lien would not be filed if the McGregors accepted a loan from TexStar to finance the Amarillo hotel." However, Plaintiffs did not attach or reference this exhibit in their response to Garrett's motion, and consequently, we see no error in the district court's conclusion that Plaintiffs failed to controvert the facts alleged in Garrett's motion. But even if Plaintiffs had alerted the district court to their earlier exhibit, the district court did not abuse its discretion in declining to consider an unsworn statement submitted in response to a motion for summary judgment. *See Marquez v. Gomez*, 1991-NMCA-066, ¶ 20, 116 N.M. 626, 866 P.2d 354. And to the extent Plaintiffs rely on this unsworn statement as evidence of a fact issue, we note that Angela McGregor's characterization of her conversation with Garrett as set forth in the unsworn statement directly contradicts the sworn deposition testimony she gave two years earlier, which Defendants relied upon when moving for summary judgment. Under these circumstances, Plaintiff Angela McGregor's unsworn statement is insufficient to create a genuine dispute of material fact. *See Rivera v. Trujillo*, 1999-NMCA-129, ¶¶ 7-9, 128 N.M. 106, 990 P.2d 219.

## 2.      Remaining Misrepresentation Claims

**{31}**    Garrett sought summary judgment on the remaining misrepresentation claims arising out of the Clovis loan transaction in a separate motion. He asserted that, after conducting discovery, he could discern only two alleged representations that form the basis of Plaintiffs' misrepresentation claims: (1) Garrett told Plaintiffs he had bought out TexStar and would continue Plaintiffs' loans with no changes, and (2) the amount of the Clovis loan would be just over $5.1 million. Because Plaintiffs did not dispute this characterization of their remaining claims in their response or point to any additional bases for their misrepresentation claims, we limit our review to these matters, disregarding the additional, but unpreserved, problems they continue to raise in their brief in chief.[6] *See Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 1997-NMCA-025, ¶ 32, 123 N.M. 170, 936 P.2d 852 (stating that the normal rules of preservation apply to appeals from summary judgments).

**{32}**    Garrett's first argument sought to address Plaintiffs' claim that Garrett misled them into believing that Platinum could be held liable for TexStar's torts. Garrett's motion argued that his statements concerning the buy-out were not false and Plaintiffs did not justifiably rely on them. Garrett also set out as undisputed material facts the content of his representations to Plaintiffs, Platinum's repeated denials that it was responsible for TexStar's conduct, and TexStar's effort to alert Plaintiffs that it was a separate entity capable of being sued. Garrett supported these facts with the parties' discovery responses, Plaintiffs' deposition testimony, and a letter from TexStar's attorney to Plaintiffs' counsel. Garrett's motion was sufficient to establish a prima facie case for summary judgment.

**{33}**    Plaintiffs did not respond to this argument in any way in their written response and the district court granted Garrett's motion on that basis. Although Plaintiffs reiterate on appeal that Garrett led them to believe Platinum would be responsible for the loans, we can discern no legal argument explaining why summary judgment was improperly granted on this claim. "General assertions of the existence of a triable issue are insufficient to overcome summary judgment on appeal." *Guest*, 2008-NMCA-144, ¶ 35; *see also Freeman v. Fairchild*, 2018-NMSC-023, ¶ 21, 416 P.3d 264 ("[T]he district court may grant summary judgment if the moving party has made a prima facie case of entitlement to summary judgment and the non-moving party has failed to respond[.]"). We affirm the district court's grant of summary judgment on Plaintiffs' misrepresentation claims regarding Garrett's purchase of TexStar.

**{34}**    As to the second misrepresentation claim, Plaintiffs contend the parties' attorney, Hawthorne, engaged in misrepresentation by silence when he failed to disclose a fax from Garrett's assistant representing the amount of the Clovis loan as just over $5.1 million. Plaintiffs and TexStar entered into a loan commitment in May 2005 for a new hotel in Clovis and TexStar agreed to lend Plaintiffs $3 million. In July, Garrett's

---

[6]These include Plaintiffs' claims regarding starts and stops of construction on the Clovis hotel, the alleged concealment of the July 2005 loan documents, and an increase in the interest rate and the cost of the title policy on the Clovis loan.

assistant faxed a letter to Hawthorne asking him to prepare the legal documents for the new loan. The letter contained a numbered list of thirteen items including the "amount of loan," next to which was typed "$5,132,284.36." Garrett stated that the figure was an error and actually represented the unpaid balance on the Amarillo loan. More importantly, Garrett argued that Plaintiffs never saw or knew about the instruction letter until the summer of 2007—two years later. Plaintiffs admitted as much in their response, saying, "Mr. Hawthorne never discussed the document with Plaintiffs, nor did he tell them that TexStar and Garrett were willing to loan Plaintiffs more than $3,700,000"—the final loan amount.

**{35}** When Garrett moved for summary judgment on this claim, he pointed out that "there is no factual basis for [Plaintiffs'] contention that [TexStar] (or Garrett) was willing to loan more than $3.7 million[,]" and that it was undisputed that the insertion of $5,132,284.36 on the fax was an error. As well, Garrett argued that Plaintiffs' misrepresentation claim fails as a matter of law because Plaintiffs did not learn of the letter (and of the erroneous statement within it) until 2007, and therefore could not have relied on it or suffered any pecuniary loss as a consequence. We hold that Garrett made a prima facie showing that Plaintiffs did not justifiably rely upon the representation or suffer injury therefrom. *See Blauwkamp*, 1992-NMCA-048, ¶ 14.

**{36}** On appeal, Plaintiffs advance the same argument they presented to the district court: a single paragraph asserting that Hawthorne, a fiduciary of both TexStar and Plaintiffs, apparently knew that Plaintiffs wished to borrow additional funds and that his silence after receiving the fax "is a misrepresentation of facts by silence." Plaintiffs cited to a Texas real-estate case for the proposition that "where there is a duty to speak, silence may be as misleading as a positive misrepresentation of existing fact." *Smith v. Nat'l Resort Cmtys., Inc.*, 585 S.W.2d 655, 658 (Tex. 1979) (adopting the rule that "a seller of real estate is under a duty of disclosing material facts which would not be discoverable by the exercise of ordinary care and diligence on the part of the purchaser" and holding that the plaintiffs were entitled to rescind a contract to buy a lakefront lot that was subject to an undisclosed easement). Plaintiffs presented no further explanation or analysis, leaving unanswered the questions of how Hawthorne's silence could constitute a misrepresentation by Garrett that would subject Garrett to liability, and on what basis Hawthorne had a duty to speak here. Plaintiffs' bare argument and contentions fail to demonstrate either a disputed issue of fact or an error in the application of the law. *See Elane Photography, LLC*, 2013-NMSC-040, ¶¶ 70-71; *Guest*, 2008-NMCA-144, ¶ 35. We affirm the district court's grant of summary judgment on the Clovis loan claims.

### 3.    Constructive Fraud

**{37}** Finally, Plaintiffs challenge the district court's grant of summary judgment on their constructive fraud claim. Because the parties have not identified the underlying theory of the claim, we cannot discern whether it is included within the previously addressed misrepresentation claims and therefore briefly address it here.

**{38}**  Under Texas law, "[a] claim for constructive fraud is premised upon the existence of a fiduciary relationship and a breach of the duty created by that relationship." *Kohannim v. Katoli*, 440 S.W.3d 798, 810 (Tex. App. 2013). "In Texas, a special relationship does not normally exist between a borrower and a lender, and when one has been found, it has rested on extraneous facts and conduct, such as excessive lender control over, or influence in, the borrower's business activities." *Greater Sw. Off. Park, Ltd. v. Texas Com. Bank Nat'l Ass'n*, 786 S.W.2d 386, 391 (Tex. App. 1990), *superceded in statute by Resolution Tr. Corp. v. Westridge Court Joint Venture*, 815 S.W.2d 327 (Tex. App. 1991). "[The borrower's] mere subjective trust in the [b]ank, by itself, is not enough to transform the arms-length dealings of a debtor and creditor into a fiduciary relationship." *Id.*

**{39}**  Plaintiffs argue that (1) Hawthorne was an attorney for, and agent of, the bank; and (2) the law in Texas includes informal, moral, social, domestic, or personal dealings. They cite *Brazosport Bank of Texas v. Oak Park Townhouses*, 889 S.W.2d 676, 683 (Tex. App. 1994), which states that "a fiduciary relationship may arise from informal moral, social, domestic, or personal dealings as well as from technical relationships such as attorney-client[,]" but finds no fiduciary relationship between the bank and the borrower.

**{40}**  To the extent Plaintiffs' claims are grounded in Hawthorne's actions on behalf of TexStar, Plaintiffs did not make that argument to the district court and failed to preserve it for appeal. *See Spectron*, 1997-NMCA-025, ¶ 30 (declining to consider the plaintiffs' theories of liability because they were not presented to the district court in response to the defendant's motion for summary judgment).

**{41}**  On appeal, Plaintiffs made no argument specific to Garrett. Relying on *Brazosport Bank of Texas*, 889 S.W.2d at 683, they said only that "the law in Texas . . . includes more than just attorney and client. The law includes formal, moral, social, domestic, and personal dealings[.]" Plaintiffs provide no explanation of how or why these exceptions apply to the facts of this case, nor did they present any facts that would allow us to evaluate this claim, and their argument is insufficiently developed to permit review on appeal.[7] *Elane Photography, LLC*, 2013-NMSC-040, ¶ 71 (stating that the plaintiff's three-sentence argument and failure to provide explanation as to how or why the two cases cited apply to the facts of the case was inadequate as a matter of law to permit review); *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to review a worker's argument where his brief in chief contained less than a page devoted to the issue, there was "no explanation of his

---

7We observe that Plaintiffs attached another unsworn statement by Plaintiff Angela McGregor to their response in the district court proceedings, which generally asserted "the McGregors were friends with Garrett, had a social and personal relationship with him, and trusted him," but have not cited to or relied upon the document or its allegations in their briefing to this Court. *See Guest*, 2008-NMCA-144, ¶ 35 ("Our rules of appellate briefing are clear: an argument which, with respect to each issue presented, shall contain the contentions of the appellant with citations to authorities and parts of the record proper, transcript of proceedings or exhibits relied on." (alterations, omissions, internal quotation marks, and citation omitted)). Even if they had, their failure to develop an argument around these allegations is fatal to their appeal on this claim.

argument, nor [were] there any facts that would allow us to evaluate this claim[,]" and he failed to cite to the record to support his assertions). We affirm the district court's grant of summary judgment on Plaintiffs' constructive fraud claims.

**CONCLUSION**

**{42}** For the foregoing reasons, we affirm the district court's grants of summary judgment.

**{43}   IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**BRIANA H. ZAMORA, Judge**